Our first case for argument today is 24-1246, IPA Technologies v. Google. Mr. Hartzell, please proceed. Good morning, Your Honors. May it please the Court, Stephen Hartzell on behalf of IPA. This appeal turns on a single legal failure. Specifically, there is no evidence in the record that Dr. Moran conceived of any of the three novel aspects of the OA facilitator that's the subject of Section 4.5 of the Martin Reference. Dr. Moran never makes such a claim. The Board ignored this fatal evidentiary defect. Instead, the Board defaulted to a credibility contest. The Board decided that Dr. Moran was more credible than Mr. Shirey and Mr. Martin. Because he's credible, therefore, he must have invented something. That was improper. General credibility cannot be a substitute for evidence of conception. I think it's important to step back to this Court's earlier opinion in 2022. There, this Court acknowledged that Dr. Moran made general technical contributions to the LAA project. But this Court said, that's not the relevant inquiry. What's relevant is, did he make an inventive contribution to the portions of the reference relied on? Now, when we go and we look at Section 4.5 of the Martin Reference, the very first paragraph says that facilitation plays a central role in OAA. Can I just ask you this? Yes. So I'm not remembering with enough precision, so correct me. I thought that you agreed, and I'm going to summarize it this way, to look at 4.5 essentially as a block, not to look inside 4.5 for specific ideas that were the specific ideas carried over into the claims that are not challenged. Did I misunderstand that? I can't say it was ever IPA's argument. That may have been Google's argument. But I think it's kind of important to go back to the earlier decision. When we're looking at that, again, the very first paragraph of that says that our notion, being the OAA notion, as a facilitator is similar to that proposed by others. I'm thinking of, and you're going to have to identify it if you know, that you agreed, I don't know whether it was on remand, or I think it was on remand, that you agree that 4.5 is the relevant portion. I agree that 4.5 is. Why does that not allow the board to conclude that the issue is whether Dr. Moran contributed to 4.5, no further refinement? Because the very first paragraph of 4.5, again, says facilitators were known, and then the very last sentence says the OAA facilitator differs in three ways. And this court, in its prior opinion, said, okay, we look at these three different ways. Those are the concepts that made it into the 115 and the 560 patent. So essentially, the very first paragraph of section 4.5 of the Martin reference is just facilitators were known. The OAA facilitator differs in three respects. His testimony might be read to say he only contributed to the first paragraph, the background part. Is that right? Is that the theory? Because he said he contributed to 4.5, and 4.5 is what you call the three novel features in it, right? But he never addresses any of the three novel features, and I think that's— Why does he have to do that when he says I contributed to 4.5? Because facilitators were known. So again, this court, in its, I think it's footnote three of its prior opinion, said that, again, what we really have to look at is we have to look at the reference being considered, and the portions being relied upon must be relevant to establishing obviousness. So again, the very first paragraph, if it's just facilitators were generally known, well, that's a prior art concept. Again, this court already recognized that it's the three novel features. Those are the concepts that made it into the patent. Therefore, it needs to be one of those three concepts that Dr. Moran needs to have conceived of or contributed to or invented in some way. Okay, so I'm looking at 4.5 itself, which is on 2872 and 2873, and yes, it says, you know, facilitators play a central role in OAA, but then it goes on to say, it talks about delegation, compound goals, which, in third respect, the OAA facilitation extends the basic concept of facilitation. So it seems as though the OAA facilitator that is at issue here and being discussed performs what you're suggesting, three general things, right? Yes, I call them the three novel aspects, yes. Okay, well then on page 21 of the board's opinion, I mean, I think I might be the only one new to this case. I think my other panelists may have been on this one before, but at page 21 of the board's opinion, we find that Petitioner Dr. Moran has sufficiently identified the facilitator in the Martin reference as his work and persuasively asserted that his background and experience with OAA and distributed software systems supports his contribution to the conception of the facilitator in the distributed agent approach of 4.5. So why isn't that enough? It's identifying the OAA facilitator discussed in 4.5. 4.5, yes, the first sentence is a general one about facilitators have long played a role, but all the rest of the paragraphs of 4.5 are about what you call these three novel aspects, and the board has made a precise and specific fact finding that they credit his claim that he contributed to the conception of the facilitator in the distributed agent approach in 4.5. Why isn't that enough? Because Dr. Moran's declaration never speaks to any of that. Dr. Moran, when you read Dr. Moran's declaration, he's very clear when he claims— Wait, so if, suppose that, so I don't understand, so the board found expressly, made a fact finding that, so you're now saying this fact finding is supported by substantial evidence, is that your argument? Yes. So the board did make a fact finding that he contributed to what is disclosed in 4.5, which, as far as I'm concerned, is good enough to cover the novel aspects, because it would be weird for the board to say he contributed to the already known concept of facilitators. That would be written differently than he contributed to the OAA facilitator described in 4.5, right? I believe so. Okay, so the board made a fact finding which, on its face, ought to be sufficient. You're just saying I have to look past that fact finding to the substantial, whether there is substantial evidence for that fact finding, and why do you say there is not? Because when you look at Dr. Moran's declaration, nowhere in his declaration— Tell me where you want me to look. That's the problem, is there's a lack of evidence here. So for 2677, he says, I played a significant role regarding the distributed agent approach, and in particular using a facilitator as described in the OAA paper at Section 4 and 4.1 to 4.5. But when—so for example, if you look at Appendix 2669, Paragraph 25, Dr. Moran says, I conceived of an agent, he's talking about a database agent. He clearly, when he wants to claim credit, he says, I conceived of something. Appendix 2669, Paragraph 26, he talks about security features, and he says, I included those. But then when you get to Appendix 2671, Paragraph 29, when he's talking about the OAA facilitator itself, he says, the OAA facilitator that my team at SRI developed. He didn't say, be in my team at SRI developed, that my team developed this at my direction based on my specifications. He never claims to have actually developed the OAA facilitator, much less any of the three novel aspects. And that's been the problem. I think that's the problem with his whole declaration, is that there are no specifics. That's exactly what he says here. He says, I played a role, significant role, in developing the facilitator described in 4.5 and other places. But we don't know what that role is. And I think that's the problem. If we go back, again, this court earlier faulted the board for not performing the Duncan Parking analysis. And I think Duncan Parking is very instructive. When you go back and look at that case, you know, what was at issue there was Figure 8 and the anticipating reference. And it was whether the Chief Technology Officer, Mr. Schwartz, had drawn that. When you finish reading Duncan Parking, you know exactly what Mr. Schwartz was alleged to have conceived. He did the Figure 8, which the electrical element, which was a significant problem. That was his role. That was the part of the project he was tasked with figuring out. And there was evidence in the record where Mr. Schwartz himself said, I came up with the idea that there needs to be power management blocks next to central controllers. He says that he conceived of the notion of connecting solar panels to the recharge battery. In other words, in Duncan Parking, there was a very, I think there was very, very clear statements from Mr. Schwartz. We know exactly what Mr. Schwartz was alleged to have conceived. And then, of course, the evidence to support that. Here, Dr. Moran's declaration just has several high-level statements. Again, I played a role. What does that mean, playing a role? I sat in the room while it happened. But part of the problem for me is that I have to review those statements under a substantial evidence standard. The board decided when he said, I played a significant role regarding the distributed agent-based approach in 4.5, that that was sufficient. I don't, it's not a question of law. That's a question of fact and substantial evidence. What does that statement mean when he says it? Maybe I personally would have said, I need more explanation than that. I played a significant role. It's just not good enough for me personally. But I don't get to do that. This isn't a no-go. Well, I believe in whether there's conception, whether there's inventorship is a de novo review. I know it's based on underlying, based on the underlying facts. This is a question of whether there's substantial evidence in the form of his declaration to support the board's fact-finding. So they're looking at that statement and they're interpreting what he is claiming to have done. That sounds like fact to me. And I guess we would just disagree because, again, there is nothing, we don't know, we specifically do not know what Dr. Moran is, what he specifically believes that he did. And I think this is particularly problematic here, again, given that the Martin reference already acknowledges that facilitators are known in the arts. I have a couple of dumb questions. These are just procedural dumb questions. Do you have an opportunity to depose Dr. Moran? Yes. So did you depose him? Yes. And did you ask him these questions? No, I did not ask him these questions. Why isn't that on you? Because— He made a statement, I played a significant role in this, and the board decided that's enough to say he meaningfully contributed to the invention of this concept. And you had a chance, you had this declaration in front of you when you deposed him, and you chose to ask him no questions to follow up on the nature of his role. Because this is, I think one of the important points to remember is, this came up because this reference was already, had already been excluded by the examiner in the original this reference. It came back in because in Google's IPR, it wanted to use it. So Google bears the burden, as this court already found, of proving that that reference qualifies as prior art. So when the reference was already disqualified, it's Google's burden to come in and say specifically, given that this reference was already excluded, what specifically did Dr. Moran contribute? What exactly did he do? He didn't do that. I don't believe it's IPA's burden to then go back in and fill in the gaps that Google purposely left out. I don't think there's a gap. I think he made a somewhat conclusory statement, but he made a statement. The board then relied on that statement, which it's entitled to do, and made a credibility determination. And you're saying, well, that statement wasn't detailed enough because we don't know whether it contributed to this or contributed to that. And you had a chance to depose him, and you chose not to ask those questions. I don't, I don't, I don't know. Why don't we save the rest of your time for rebuttal, unless you have anything further? No, Your Honor. Thank you. Let's save it for rebuttal, then. Mr. Zellberger. May it please the court, Daniel Zellberger for Google. Substantial evidence supports the board, the court's, the board's determination that Dr. Moran is a joint inventor of the applied portions of the Martin reference, rendering it prior art under Pre-AA Section 102A. This is a deeply factual case involving conflicting testimony from three fact witnesses, as this court observed in the last decision and as the board observed. His whole point is that there isn't actually conflicting testimony. There is a very carefully worded with clever, his characterization would be, clever placement of commas in that sentence on 2677, so that you can't tell whether he is saying, I contributed to the facilitator, comma, which is used in 4.5, or whether he's saying, I contributed in a meaningful way to the particular facilitator used in the way it is specified in 4.5. And you just can't tell which, which those two things mean. So what, what does one, I take it that's his argument? Yes, Your Honor. And I agree that is IPA's argument, and that's simply not a plausible interpretation of Paragraph 39 of Dr. Moran's declaration, and certainly not one that would show the board. Assume with me, I think it is a plausible interpretation. What do I do then? Well, I would say the board's interpretation, even if that is a plausible interpretation, the board's interpretation of Paragraph 39 is the more likely to be correct, and it's one that's supported by additional evidence. What's the additional evidence? Well, besides the testimony itself, which I do want to talk about, there's also the Dr. Moran's testimony explaining why he was in a position to make the contributions that he made, talking about his history, the other projects that he worked on, and those other projects even tied in with the article. That doesn't make sense to me. Talking about the fact that he was equipped to have made a contribution is not saying I made a contribution. There's a million people out there that are qualified to do something, that have a background sufficient that they could do something. It doesn't mean they did it. Your Honor, I think this case is different. It has one very crucial fact that the board found very significant. That was the other article where Dr. Moran was the lead author. Mr. Martin wasn't an author at all. This article, which published around the same time, talked about the origins of the facilitator, and it identified two projects that only Dr. Moran had worked on, not Mr. Martin, not Mr. Shire. And that evidence was so damning to IPA's case that during deposition, Mr. Shire said that wasn't true. His own article, he's listed as the second author, he said, what I said in my article wasn't accurate. The board specifically pointed to that at Appendix 23, where they said that Mr. Shire disagreed with the article's description of the origins of OEA and the facilitator. I'm a little confused. How does what you just said tie into the idea that was a central part of your friend's discussion, that there are three particular aspects of the facilitator set out in 4.5? Does what you just said about an earlier article relate to those three particular aspects, the transparent delegation, first, second, third? Well, I was answering Judge Moore's question about why background is relevant. I think the article is also— Why is it relevant? So the article is also relevant because the article also talks about the facilitator, and it talks about functionality that goes to at least one of those three inventive features. It says— What you're about to say is central. So I'm all ears. Yes, Your Honor. At Appendix 4951. Okay, this is the earlier article that you— That's right, Your Honor. At Appendix 4951 in the first paragraph on the right-hand side— Do we have agents? About five lines from the bottom, it says, the natural language system produces a logical form representing the user's request and passes it to the facilitator agent, which decomposes it into requests that can be handled by the individual application agents. And then when we look at Section 4.5 of the Martin reference, that goes to how it describes as what IPA would coin the second novel feature, the OAA facilitator's handling of compound goals, including its involvement of about seven lines down in that paragraph, how this involves the selection of one or more agent to handle each of its sub-goals. Those are describing the very same concept of— So, Paige, I assume you're directing me to 2872? That's correct, Your Honor. The last paragraph under—that begins with the word second? That's right. Okay. About eight lines down? Right. Well, so the paragraph starts by talking about how it's describing the handling of compound goals and how this involves selecting one or more agents to handle each of its sub-goals. I would also say, Your Honor, that I don't think IPA's interpretation of Appendix 2677 is a reasonable one. If we look at significant role in a vacuum, then perhaps there's different interpretations of what significant role might mean. But here, we have one sentence where Dr. Moran says, I had substantial experience in distributed systems and contributed to the conception of distributed technologies that are at the core of the OAA paper. And then the next sentence is describing that conception. He says, in particular. In particular, I played a significant role regarding the distributed agent-based approach, and in particular, using a facilitator as described in the OAA paper at section 4 and 4.1 to 4.5. And if there was any question— Does the phrase distributed agent-based approach, how does that map on to the first, second, third items in 4.5? Well, so the first, second, and third items in 4.5 go to features of the facilitator, characteristics of the facilitator, I would say. The facilitator is just one component, and the three aspects are really describing characteristics of it. In our view, you don't parse down granularity. I mean, you can always go a level deeper. If we said Dr. Moran contributed to the second novel feature, they would say, well, what subcomponent of the second feature? In our view, you look at the components. The facilitator is one component of the OEA system. The facilitator is what he's saying he contributed significantly to. The distributed nature of the OEA system, that involves really the entire OEA system. And Dr. Moran was—I mean, even Mr. Martin and Mr. Shire don't dispute that Dr. Moran was the leader of the team. He was really ingrained in everything. But the issue right now is the facilitator. And by assisting in the conception of the facilitator and having a leading role in that, he contributed to all three of the novel aspects described in Section 4.5. If there was even still any ambiguity in the sentence describing Dr. Moran's significant role, I think the last sentence of this paragraph is also instructive. There he says, as discussed above in Sections 2 and 3, my personal experiences and background helped me conceive of and add such contributions to the OEA paper. So there he's making clear that when he's talking about his significant role, he is talking about conception. Was there an opportunity and or a request for further discovery on remand from our previous decision? There was not, Your Honor. Neither a request nor an opportunity, hence no request or what? That's right. There was further briefing. And I would note that in that further briefing, IPA made a point that I think is instructive that the Board quoted in Appendix 23. Here, the Board said, quote, patent owner also states that Shire and Martin both, quote, here they're quoting the patent owner's remand brief, independently testified that Dr. Martin did not make technical contributions to the core infrastructure of OEA, which would have included the facilitator. So it's really, IPA has kind of constantly shifted positions throughout this proceeding. But the dispute between Dr. Moran on the one hand and Mr. Shire and Mr. Martin on the other has always been about who invented the facilitator, generally, as it applies to the OEA. We happily have not been discussing this morning this broader idea that Dr. Moran was a mere administrator as head of the project. We were talking about something much more focused. Right, Your Honor. And on your question on further discovery, there was none. There was further briefing. It was just further briefing. Unless there are further questions, I respectfully ask that the Board's decision be affirmed. Mr. Hartzell, do you have some further questions? Yeah. Just one or two quick points regarding the other OEA paper. Mr. Shire is named on the paper. The facilitator, what little there is discussed in there, again, there's not a lot about the three novel aspects. That's Mr. Martin, that's Mr. Shire's work. Nowhere in that paper does Dr. Moran say, this is mine. Actually, Dr. Moran's declaration in his testimony, he didn't testify about that paper. Furthermore, the fact that his name's on that paper, there's been a lot of testimony in the record about why Dr. Moran's name is included on some of those papers. And I would note that at Appendix 2673, Paragraph 33, Dr. Moran talks about, you know, part of his job responsibilities included funding proposals and research publications. It was his job to, you know, get papers about OEA out there to get funding. At the end of the day, unlike the Duncan Parking case, nobody can say specifically what Dr. Moran allegedly contributed, conceived of, or invented as it relates to the claimed OEA facilitator. I think that is a fatal defect. That is a fatal defect in this case. And unless the court has any other questions, IPA would respectfully request this court reverse the board. I thank both counsel. And this case is taken under submission.